AMBRO, Circuit Judge,

Concurring in Part and Dissenting in Part

Judge Garth has written an excellent opinion, though I respectfully disagree in two respects. In my view, the Bankruptcy Judge erred on the “prejudgment” interest issue and in granting Kool, Mann the tax savings credit. In his March 1999 opinion, the Bankruptcy Judge decided both of these questions in the Coffeys’ favor. But in a supplemental opinion in October 2000, he reversed himself. On these two issues, the Bankruptcy Judge should have observed the old adage that your first instinct is often the right one.
A. Prejudgment interest
Kool, Mann argues that a payment of $291,784 that it tendered to the Coffeys in October 1986 was a payment against principal on its promissory note, which should be set off against the Coffeys’ bankruptcy claim. The Coffeys maintain, however, that this was an interest payment that Kool, Mann owed them under the promissory note. The Bankruptcy Judge initially agreed with the Coffeys and classified the payment as interest. However, he subsequently had a change of heart and decided to credit the payment against principal and reduce the Coffeys’ claim by that amount. He justified this new outcome by relabeling the $291,784 *455 payment as “prejudgment interest” and noting that he had decided in his March 1999 opinion not to grant the Coffeys prejudgment interest on their bankruptcy claim.
The Bankruptcy Judge erred because, under Kentucky law (which governs this issue), the question whether to grant prejudgment interest arises with regard to unliquidated damages claims (often sounding in tort), not with regard to contractual disputes where the contract clearly requires specific interest payments. See State Farm Mut. Auto. Ins. Co. v. Reeder, 763 S.W.2d 116, 119 (Ky. 1988). Interest due on a promissory note before the debtor files for bankruptcy is part of the creditor’s claim against the debtor in bankruptcy just like any other prepetition amount owed on the note. 11 U.S.C. § 502(b). The decision to award required interest payments on the valid portion of a contractual claim, is not a discretionary matter. Thus, while the Coffeys cannot keep the whole interest payment because most of it was based on a fraudulent principal amount, they should plainly be allowed to keep any interest due on the non-fraudulent portion of the compahy’s purchase price.
Accordingly, I would remand to the Bankruptcy Judge to calculate how much interest would have been owed, under the promissory note, on $766,631 (which equals the company’s legitimate market valúe of $1,766,631 minus the $1,000,000 down payment). A remand for this discrete purpose would not consume much time or resources, as the parties would not be permitted to reargue any other aspect of this ¿ase. While it is easier to dispose of this issue ourselves by tossing out the entire interest payment, the portion of the $291,784 that represents non-fraudulent interest could be a significant sum of money, and there is inherent value to our reaching correct outcomes. Unless we are prepared to make the calculation ourselves, the Coffeys have the right to have this issue resolved properly by the Bankruptcy Judge.
B. The Tax Savings Credit
On the first appeal to Judge Fullam, he opined that Kool, Mann was not entitled to a credit pursuant to its agreement with the Coffeys that it would receive the benefit of any tax savings that the Coffeys realized by structuring the deal as a stock purchase rather than an asset purchase. On remand, Judge Gindin initially ruled that he was constrained by this outcome and denied Kool, Mann the $236,522 tax savings credit it requested. Somewhat inexplicably, however, Judge Gindin changed his *456 mind in his October 2000 opinion and granted Kool, Mann the credit. On appeal to the District Court, Judge Brotman reversed him on the basis that his decision did not comply with the original appeal to Judge Fullam. We should affirm that decision (albeit for a different reason).[1]
Under the plain language of the Tax Savings Side Letter, Maj. Op. at n.15, Kool Mann is not entitled to a tax savings credit. The Side Letter provides for a reduction of the “balloon payment of $4 million ... adjusted to compensate the final balance due then under the note” for “any tax savings to us ... resulting from capital gains treatment ultimately accorded to the disposition of the boat assets of the partnership.” (Emphasis added.) The Bankruptcy Judge concluded that the Coffeys realized tax savings in 1986 due to “depreciation recapture.” Depreciation recapture is of course not capital gains treatment.[2] To my knowledge there has not been a capital gains tax savings, and thus Kool Mann is not entitled to the $236,522 tax savings credit.

 As can be seen below, my disagreement is on the merits, for I agree with the majority that Judge Fullam’s statements on this issue were not binding on the Bankruptcy Court.

 Depreciation recapture arises when a taxpayer sells a capital asset after it is depreciated. Depreciation recapture is the portion of the amount realized from the sale of a capital asset that is equal to the total depreciation deduction reported for the asset. Depreciation recapture is subject to tax at ordinary income tax rates. Capital gains occur when a taxpayer sells a capital asset for more than what the taxpayer paid for it. Generally, the difference in the amount received by the taxpayer for the sale of the capital asset, over the amount paid by the taxpayer when the asset was purchased, is subject to capital gains tax. With capital gains, tax savings result because the rate of tax imposed on the gain received is lower than ordinary income tax rates.